IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

OSAMA HASSOUN and KAREN A. HASSOUN,

        Plaintiffs,

    v.

WELLS FARGO BANK, N.A., FIRST AMERICAN LOANSTAR TRUSTEE SERVICES LLC, and DOES 1-100, inclusive,

        Defendants.

2:09-cv-03261-GEB-GGH

ORDER DENYING PLAINTIFFS' EX PARTE APPLICATION FOR A TEMPORARY RESTRAINING ORDER

On February 18, 2010, Plaintiffs filed an ex parte application for a temporary restraining order ("TRO") in which they seek to enjoin Defendants "from foreclosing, selling, auctioning, causing to be sold, auctioned, transferring ownership or further encumbering the real property located at 141 Chimney Bluff Court, Folsom, CA 95630." (Ex Parte Application 1:25-2:12.) Plaintiffs state Defendant "First American is presently planning to conduct a trustee sale of the subject property tomorrow Friday, February 19, 2010 at 10:00 a.m." (Ex Parte Application 9:3-5.) Plaintiffs argue they are entitled to injunctive relief since Defendants "failed to properly comply with the requirements of California Civil Code §§ 2923.5 and 2924" as follows:

- Defendants "failed to contact Plaintiffs to assess their financial situation and to explore their options to avoid foreclosure prior to issuing the [Notice of Default]." (Ex Parte Application 8:9-11.)

1

- Defendants "failed to advise Plaintiffs of the contact information for HUD." (Ex Parte Application 8:11-12.)
- Defendants "induce[d] Plaintiffs to sign a forbearance agreement on the promise that their loan would be modified and not foreclosed upon - a promise broken by Defendants as soon as the final forbearance payment was made." (Ex Parte Application 8:13-18.)
- "Wells Fargo insists it has not authorized First American to proceed with the trustee sale, First American insists it is so authorized. One or the other is lying. If Wells Fargo is telling the truth, then First American is without authorization from the beneficiary to proceed with the foreclosure and the sale must be stopped. If First American is telling the truth it is but one more example of Wells Fargo's ongoing fraud and deceit in the context of this foreclosure." (Ex Parte Application 8:19-26.)

**I.  Legal Standard**

Federal Rule of Civil Procedure 65 governs the issuance of a TRO. "A plaintiff seeking a [TRO] must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." Am. Trucking Ass'n, Inc. v. City of Los Angeles, 559 F.3d 1046, 1052 (9th Cir. 2009) (quoting Winter v. Natural Res. Def. Council, Inc., --- U.S. ----, 129 S. Ct. 365, 374, (2008)); see also Stuhlbarg Intern. Sales Co., Inc. v. John D. Brushy and Co., Inc., 240 F.3d 832, 839 n.7 (9th Cir. 2001) (stating the standards for issuing a TRO are "substantially

identical" to those for issuing a preliminary injunction); <u>Pimentel v. Deutsche Bank Nat. Trust Co.</u>, 2009 WL 3398789,*1 (S.D. Cal. 2009) (stating that "[t]emporary restraining orders are governed by the same standard applicable to preliminary injunctions") (citation omitted).

Further, "[i]n considering a motion for a temporary restraining order, the Court will consider whether the applicant could have sought relief by motion for preliminary injunction at an earlier date without the necessity for seeking last-minute relief by motion for temporary restraining order. Should the Court find that the applicant unduly delayed in seeking injunctive relief, the Court may conclude that the delay constitutes laches . . . and may deny the motion solely on [that] ground." E.D. Cal. R. 231(b).

**II. DISCUSSION**

Plaintiffs "could have sought relief by motion for preliminary injunction at an earlier date without the necessity for seeking last-minute relief by motion for [a TRO]." E.D. Cal. R. 231(b). Plaintiffs have been aware of Defendants' desire to initiate foreclosure proceedings on Plaintiffs' property, at a minimum, since May 12, 2009, when First American Title Insurance Company recorded the Notice of Default. (Request for Judicial Notice in Support of First American Loanstar Trustee's Motion to Dismiss, Harris Decl. Ex. D.) Plaintiffs allege in their First Amended Complaint ("FAC") and argue in their Ex Parte Application that Defendants recorded a separate Notice of Default in November 2009. Nonetheless, Plaintiffs did not seek injunctive relief until the afternoon of February 18, 2010, less than twenty four hours before the scheduled sale of their property. Plaintiffs,

3

therefore, have not sufficiently demonstrated that their delay in seeking injunctive relief was justified. Accordingly, Plaintiffs' "undu[e] delay" "constitutes laches" and provides a basis for denying Plaintiffs' TRO request.

Further, Plaintiffs have not established that they are likely to succeed on the merits of their claims. "[U]nder California law, a defaulted borrower is required to allege tender of the amount of the lender's secured indebtedness in order to maintain any cause of action for irregularity in the sale procedure." Bouyer v. Indymac Fed. Bank, 2009 WL 1765668,*2 (N.D. Cal. 2009) (quoting Abdallah v. United Savings Bank, 43 Cal. App. 4th 1101, 1109 (1996)); see also Lopez v. Chase Home Finance, LLC, 2009 WL 1120318*6 (E.D. Cal. 2009) (stating that "to enjoin a foreclosure sale due to non-judicial foreclosure defects, the [borrower] must in good faith tender amounts to cure the default"); Yazdapanah v. Sacramento Valley Mortgage Group, 2009 WL 4573381,*7 (N.D. Cal. 2009) (stating that "[w]hen a debtor is in default . . ., and a foreclosure is either pending or has taken place, the debtor must allege a credible tender of the amount of the secure debt to maintain any cause of action"). "A valid and viable tender of payment of the indebtedness owing is essential to an action to cancel a voidable sale under a deed of trust." Karlsen v. Am. Sav. and Loan Assn, 14 Cal. App. 3d 112, 117-18 (1971).

The Notice of Trustee's Sale executed on October 27, 2009 states that the "total amount of the unpaid balance" owed by Plaintiffs under their loan secured by the Deed of Trust totals $1,018,166.82. (Request for Judicial Notice in Support of Wells Fargo's Motion to Dismiss, Ives Decl. Ex. C.) Plaintiffs do not

4

dispute that they have defaulted on their obligations under the Deed of Trust. Further, neither Plaintiffs' TRO application nor their FAC includes any allegation that they are willing and able to tender the amount of outstanding debt owed. Therefore, Plaintiffs have not demonstrated that they are likely to succeed on the merits. See Bouyer, 2009 WL 1765668 at *2 (denying request for ex parte TRO to postpone foreclosure sale, in part, because plaintiffs had not "pled nor offered anything to suggest a tender to pay their debt"). "Equity will not interpose its remedial power in the accomplishment of what seemingly would be nothing but an idly and expensively futile act, nor will it purposely speculate in a field where there has been no proof as to what beneficial purpose may be subserved through its intervention." Karlsen, 15 Cal. App. 3d at 117-18 (quotations and citations omitted). Accordingly, Plaintiffs' application for an ex parte TRO is not granted.

**IV. CONCLUSION**

For the stated reasons, Plaintiffs' application for an ex parte TRO is DENIED.

Dated: February 18, 2010

_____
GARLAND E. BURRELL, JR.
United States District Judge